# In the United States Court of Federal Claims

No. 24-1105
(Filed:  11 December 2025)

```
*****************************************
COLE THOMAS MOYER,               *
                                 *
            Plaintiff,           *
                                 *
v.                               *
                                 *
THE UNITED STATES,               *
                                 *
            Defendant.           *
                                 *
*****************************************
```

*Joshua Sather*, Centre Law & Consulting, of Tysons, VA, for plaintiff.

*Kyle S. Beckrich*, Trial Attorney, with whom were *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, *Yaakov M. Roth*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, all of Washington, DC, and *Adam Bradley*, Litigation Attorney, U.S. Army Legal Services Agency, for defendant.

## <u>OPINION AND ORDER</u>

**HOLTE, Judge.**

Plaintiff Cole Thomas Moyer challenges the Army Board for Correction of Military Records' denial of relief from debt owed to the U.S. government for his disenrollment from the Virginia Tech Army Reserve Officers' Training Corps.  Plaintiff also seeks a refund of payments made to the government following his wrongful disenrollment from the Reserve Officers' Training Corps.  Following an Amended Complaint and the government's production of the Administrative Record, plaintiff filed a motion for judgment on the administrative record, and the government filed a cross-motion for judgment on the administrative record.  For the following reasons, the Court denies plaintiff's Motion for Judgment on the Administrative Record and grants the government's Cross-Motion for Judgment on the Administrative Record.

## I.    Factual Background

The Court begins by discussing the background of plaintiff's disenrollment from the Reserve Officers' Training Corps ("ROTC") program and then summarizes the Army Board for Correction of Military Records' ("ABCMR") denial of plaintiff's request for relief.

### A.    Plaintiff's Disenrollment from the ROTC Program

On 5 September 2017, plaintiff "enlisted in the U.S. Army Reserve ("USAR") and, with the Secretary of the Army, executed an Army Senior Reserve Officers' Training Corps ("SROTC") Scholarship Cadet Contract, in which the Army agreed to adhere to its regulations, pay a bevy of financial benefits for three years (six semesters), and commission [plaintiff] as an officer in the Army upon his successful completion of the ROTC program (the [ROTC] Contract)." Pl.'s Mot. for J. on the Admin. R. ("Pl.'s MJAR") at 2, ECF No. 13 (citing Admin. R. ("AR") at 35–46 (Signed and Dated ROTC Enlistment Contract), ECF No. 12-1)).[1] In exchange, plaintiff agreed to maintain a satisfactory grade point average ("GPA") and meet USAR's medical and physical fitness standards. *See* AR at 41 (Signed and Dated ROTC Enlistment Contract) (noting GPA, medical, and physical fitness requirements). Plaintiff additionally agreed if he became "disenrolled from the ROTC program for breach of contractual terms or any other disenrollment criteria established now or in the future by Army regulations," he would be subject to enlistment in the active-duty Army or required to reimburse the United States for any financial assistance paid as part of the contract, plus interest. *See* AR at 44 (Signed and Dated ROTC Enlistment Contract). Importantly plaintiff further agreed "to inform the [Professor of Military Science ("PMS")] of any changes in my eligibility (medical and nonmedical) based on current or revised requirements as soon as I know or should have known of a change in my eligibility status. Failure to so advise the PMS may result in disenrollment." AR at 45 (Signed and Dated ROTC Enlistment Contract) (emphasis omitted). "On or around July 27, 2018, [plaintiff] received one additional year (two semesters) of benefits under the Contract," so "inclusive of this one-year extension, [plaintiff] was entitled to eight full semesters of financial benefits under the terms of the Contract." Pl.'s MJAR at 2.

While subject to the ROTC contract, plaintiff served in the Virginia Tech Reserve Officers' Training Corps ("ROTC") and "majored in Business Information Technology with a concentration in Operations and Supply Chain Management. AR at 4 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote). He also obtained a minor in Chinese Studies and traveled to China for two summers of language immersion through the Project Global Officer Program." AR at 4 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote). Plaintiff "did well in the ROTC program and at Virginia Tech academically," maintained a 3.64 GPA, and "was ranked 14 out of 112 cadets by his senior rater." AR at 4 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote).

On 17 December 2020, plaintiff completed an Electronic Questionnaire for Investigations Processing ("e-QIP") "to obtain the requisite security clearance for his commission." Pl.'s MJAR at 2; *see* AR at 82–122 (Pl.'s 17 Dec. 2020 e-QIP Response); AR, Part 2 ("AR") at 229–69 (Pl.'s 17 Dec. 2020 e-QIP Response, labeled "Top Secret"), ECF No. 12-2. Section 23 of the e-QIP included questions regarding plaintiff's illegal use of drugs, in which plaintiff indicated he had "experimented with cocaine use on two different occasions" and "experimentally smoked marijuana 2-3 times." *See* AR at 115–16 (Pl.'s 17 Dec. 2020 e-QIP Response).

---

[1] The administrative record in this case is bifurcated into two parts but is consecutively paginated as a single record. *See* AR Certificate of Authenticity at 2–6, ECF No. 12. For clarity, the Court cites to the combination of both parts of the administrative record collectively as "AR."

Shortly after submitting his e-QIP response, on 7 January 2021, Professor of Military Science ("PMS") Colonel James Cogbill, counseled plaintiff regarding his responses to Section 23 of the e-QIP, where he informed plaintiff he was initiating plaintiff's disenrollment from the ROTC program for breach of contract and undesirable character evidenced by the use of illegal drugs. *See* AR at 124–25 (Col. Cogbill's 7 Jan. 2021 Counseling Statement). Colonel Cogbill also suspended plaintiff's scholarship benefits by placing him on a Leave of Absence and informed plaintiff of his right, should he elect, to have a board of officers consider his case. *See* AR at 124 (Col. Cogbill's 7 Jan. 2021 Counseling Statement). Specifically, Colonel Cogbill noted:

> (1)  [Plaintiff's] pattern of drug use is a serious offense that would make [him] ineligible to remain in SROTC.  [Plaintiff] failed to disclose this drug use previously as required by [his] SROTC contract . . . .
>
> (2)  As [plaintiff's] Professor of Military Science, I am initiating [his] disenrollment from the ROTC program . . . for the following:
>
>> Undesirable character demonstrated by cheating on examinations, stealing, unlawful possession, use, distribution, manufacture, sale (including attempts) of any controlled substances, as listed or defined in 21 USC 812, discreditable incidents with civil or university authorities, falsifying academic records or any forms of academic dishonesty, failure to pay just debts, or similar acts.  Such acts may also be characterized as misconduct. . . .
>>
>> Breach of contract (including formerly used term willful evasion). (Note: Breach is defined as any act, performance or nonperformance on the part of a student that breaches the terms of the contract regardless of whether the act, performance or nonperformance was done with specific intent to breach the contract or whether the student knew that the act, performance or nonperformance breaches the contract). . . .
>
> (3)  If you elect, a board of officers will be appointed by the brigade commander in accordance with the formal procedures . . . to consider your disenrollment case. You have the right to appear personally before the board.  You are entitled to be assisted in the preparation of the hearing by any reasonable available military officer (who need not be an attorney) or may hire civilian counsel at your expense. However, the counsel may not represent you at the hearing, although counsel may be available to give advice.  At least one school official will be invited to observe any hearings that may arise from the appointment of such board. . .  The requirement for appointment of a board of officers will be waived should you choose to voluntarily waive this right in writing within 10 days of formal notification of pending disenrollment.

AR at 124 (Col. Cogbill's 7 Jan. 2021 Counseling Statement).  On 8 January 2025, plaintiff marked "I agree" on the counseling form and digitally signed it.  *See* AR at 125 (Col. Cogbill's 7 Jan. 2021 Counseling Statement).

On 25 January 2021, plaintiff received an indebtedness estimation from Defense Financing and Accounting Service ("DFAS") totaling $121,013.50, the purported amount plaintiff would owe the government if disenrolled from ROTC.  *See* AR at 127–28 (25 Jan. 2021 Notification of Debt).  On 3 February 2023, the formal disenrollment process began, and Colonel Cogbill formally notified plaintiff of his intent to disenroll plaintiff from the ROTC program under Army Regulation 145-1 for "undesirable character as demonstrated by use of controlled substances and breach of the ROTC contract."  *See* AR at 130–33 (3 Feb. 2021 Initiation of Disenrollment).  The notification further advised plaintiff of his due process and appellate rights, including his right to consult with a military officer or civilian legal counsel, appear at a hearing, present matters, and object to disenrollment and the establishment, amount, and recoupment of any indebtedness.  *See* AR at 130–33 (3 Feb. 2021 Initiation of Disenrollment).

On 15 February 2021, plaintiff received Colonel Cogbill's formal notification.  *See* AR at 134 (3 Feb. 2021 Initiation of Disenrollment).  Specifically, plaintiff elected to have a disenrollment hearing and acknowledged:

> I have received and will thoroughly read the above Notification of Disenrollment from the Reserve Officers' Training Corps (ROTC) – Due Process and Appellate Rights of Scholarship/Nonscholarship memorandum, hereinafter "Notification."

> If I have any questions or concerns about my rights, responsibilities, and obligations regarding my disenrollment from the ROTC Program, that I may seek answers from whatever lawful, appropriate source or authority I choose to consult about those questions or concerns.

> It is my responsibility to understand without any reservation, my rights, responsibilities and obligations, as well as to fully understand the nature, the process and the consequences of the proceedings, as explained in the above Notification, or as will be explained to me by the counselor or legal advisor of my choice, as applicable.

> If I elect to NOT exercise my right to consult with a counselor or legal advisor of my choice so that I may fully understand the nature, the process and the consequences of the disenrollment proceedings, that my failure to exercise that right will constitute and be deemed a full, final, knowing, voluntary and nonappealable waiver of that right. I further understand that I must avail myself of the opportunity to consult with a counselor or legal advisor of my choice before the date the board is held and that only one (1) continuance may be granted, in the exclusive discretion of the Board President, for reasonable and just cause or reasons that are not my fault.

If I received from ROTC a bonus, any incentives and/or am a scholarship Cade, that once the approval authority terminated my scholarship in accordance with applicable laws and regulations, my scholarship may be irreversibly offered to another qualified applicant as determined exclusively by the Army (USACC).

The recommendations of my Professor of Military Science, my Brigade Commander and/or anyone else in my chain of command that are part of my disenrollment packet are not binding upon final approval authority, who may reach a different conclusion after considering my entire disenrollment packet.

AR at 134 (3 Feb. 2021 Initiation of Disenrollment).

On 16 March 2021, three officers ("Disenrollment Board") were appointed to determine plaintiff's suitability for retention in the ROTC program: Captain Brian J. Burchett, Captain Sarah B. Carriker, and Captain Johnathan D. Miller. *See* AR at 141–42 (16 Mar. 2021 Board Appointment); AR at 310 (16 Mar. 2021 Memorandum re Appointment of a Formal Board of Officers/Investigating Officer). Captain Burchett served as the Disenrollment Board president. *See* AR at 144 (17 Mar. 2021 Board Summarized Transcript); AR at 310 (16 Mar. 2021 Memorandum re Appointment of a Formal Board of Officers/Investigating Officer). A recorder, Captain Ian Q. McBride, was also present during the hearing. *See* AR at 144 (17 Mar. 2021 Board Summarized Transcript ); AR at 310 (16 Mar. 2021 Memorandum re Appointment of a Formal Board of Officers/Investigating Officer).

On 17 March 2021, the Disenrollment Board convened. *See* AR at 144–50 (17 Mar. 2021 Board Summarized Transcript). Even though Army Regulation 145-1, 10-2(d) and United States Army Cadet Command ("USACC") Pamphlet 145-4 ¶ 8-3(e) mandated the Disenrollment Board president be a field grade officer, with limited exceptions, *see* Army Regulation 145-1, 10-2(d), USACC Pamphlet 145-4 ¶ 8-3(d), at the time of the appointment Captain Burchett was not a field grade officer, *see* AR at 309 (James B. Cogbill's 27 May 2021 Memorandum of Record re Exigency for Disenrollment Board Proceedings for plaintiff).[2] This was noted in a document filed two months later on 27 May 2021, stating: "We did not have an available field grade officer to conduct the board due to our two field grade officers being the Battalion XO and OIC of Radford University, who were actively engaged in several other priorities and planning operations. As such, CPT Brian Burchett was appointed [as president] to conduct the board." AR at 309 (James B. Cogbill's 27 May 2021 Memorandum of Record re Exigency for Disenrollment Board Proceedings for plaintiff). At the beginning of the hearing, the board president explained to plaintiff he had the right to obtain civilian counsel and have a military officer appointed to assist him with the proceeding, but plaintiff responded he did not have counsel and did not have, nor a desire to have, a military officer appointed to assist him. *See* AR at 144–45 (17 Mar. 2021 Board Summarized Transcript). Further, the board president read plaintiff his rights, and plaintiff stated he understood his rights. *See* AR at 145 (17 Mar. 2021 Board Summarized Transcript) ("[BOARD PRESIDENT]: read rights, Do you understand?

---

[2] A field grade officer in the Army is a Major (O-4) or higher. *See U.S. Military Rank Insignia*, U.S. DEPARTMENT OF DEFENSE, https://www.defense.gov/resources/insignia/.

[PLAINTIFF]:  yes understand[.]").[3]  After acknowledging he was aware drug use was prohibited under the ROTC contract, plaintiff confirmed he had used illegal drugs while in the ROTC, as he had previously reported on his security clearance document.  *See* AR at 149–51 (17 Mar. 2021 Board Summarized Transcript).  Plaintiff also affirmatively chose not to challenge the impartiality of the board members.  *See* AR at 145 (17 Mar. 2021 Board Summarized Transcript).  Lastly, during the hearing, plaintiff provided 19 character references and four witnesses supporting his retention in the ROTC program.  *See* AR at 151–63 (17 Mar. 2021 Board Summarized Transcript), 193–211 (Memoranda in Support of Pl.'s Character Fitness).

After the hearing, the Disenrollment Board issued several findings.  *See* AR at 317–18 (17 Mar. 2021 Memorandum for Appointing Authority re Executive Summary for Pl.).  The Disenrollment Board found plaintiff "enter[ed] into a valid . . . ROTC Contract," but "knowingly violated the terms of the contract" as he "knew that consuming illicit drugs was prohibited before and after contracting." *Id.* at 317–18.  Noting plaintiff "could not explain why he did not disclose drug use before his . . . e-QIP questionnaire," the Disenrollment Board found plaintiff "did not consider his contract or security clearance when making his decisions," which "demonstrates apathetic behavior and attitude." *Id.*  Accordingly, the Disenrollment Board recommended against plaintiff's retention in ROTC, and required him to pay the $121,013.50 indebtedness identified by DFAS.  *See id.* at 317–18; AR at 127–28 (25 Jan. 2021 Notification of Debt); AR at 272 (DA Form 1574-2, Report of Proceedings by Board of Officers).  The Disenrollment Board, however, found plaintiff should be permitted to repay his debt via active-duty service if the Department of Defense Consolidated Adjudications Facility ("DODCAF") determined positive eligibility.  *See* AR at 317–18 (17 Mar. 2021 Memorandum for Appointing Authority re Executive Summary for Pl.); AR at 272 (DA Form 1574-2, Report of Proceedings by Board of Officers).[4]

---

[3]  The transcript produced at the disenrollment board hearing is not a direct transcript of the proceedings, but rather a summary of the proceedings stylized as a transcript.

[4] The parties at oral argument were under the misapprehension both the Disenrollment Board and Colonel had recommended against active duty in lieu of repayment.  *See* Tr. at 6:16–10:4 ("THE COURT:  [O]n 17 March, 2021, the Disenrollment Board recommended . . . [plaintiff] 'should be ordered to active duty.'  . . . [T]he party's briefing seems to suggest that Colonel Cogbill recommended against active duty in lieu of monetary back pay.  But [in his 31 March, 2021 decision] it looked like Colonel Cogbill [took the Board's position and] . . . 'recommend[ed] payback of scholarship funds, and . . . active duty in lieu of monetary payback.' [GOVERNMENT:] . . . [T]hat–your reading there–is correct.  . . . I came in here for some reason with the understanding that Colonel Cogbill had [recommended against active duty], but that appears, at least right now, to be incorrect.  . . . [PLAINTIFF:]  I came in here with the same impression.  . . . THE COURT:  [Page 12 of the ABCMR report says] 'a board of officers did not recommend [p]laintiff be called to active duty in lieu of monetary back pay.'  It looks like the ABCMR was perhaps the first to start the confusion.  [GOVERNMENT:]  That would appear correct."); *see also* Tr. at 11:14–21 ("THE COURT:  [T]he Disenrollment Board, Colonel Cogbill and Colonel Thompson all recommended [p]laintiff be allowed to serve on active duty in lieu of monetary payback.  And then Major General Davis, in his discretion, denied that request.  Is that a fair summary?  [GOVERNMENT:]  That appears to be a fair summary.").  Army regulations could be read to require decision makers to document why a Cadet is not allowed to enlist in lieu of repayment, which Major General Davis, in making such a decision, did not do.  *See* Tr. at 16:1–20:3 ("THE COURT:  [Army pamphlet paragraph 8-6.b seems to say] if [being] ordered to active duty comes off the table, then there must be some documentation. . . .

On March 30, 2021, DODCAF granted plaintiff his Top Secret/Sensitive Compartmented Information ("TS/SCI") clearance. *See* AR at 176 (6 Apr. 2021 Clearance Notification); AR at 350 (Active Cadet Record Brief). On 31 March 2021, Colonel Cogbill recommended plaintiff be disenrolled from ROTC and be required to repay the entire debt. *See* AR at 180 (Col. Cogbill's 31 Mar. 2021 Memorandum re Request for Disenrollment of plaintiff).

On 27 May 2021, Colonel Cogbill wrote a memorandum acknowledging the requirement to appoint a field grade officer as president of the Disenrollment Board and stating military exigency required he appoint a Captain to preside. *See* AR at 309 (James B. Cogbill's 27 May 2021 Memorandum of Record re Exigency for Disenrollment Board Proceedings for plaintiff). Specifically, he explained the two field grade officers in his command served in important leadership positions at another university and were not available. *See* AR at 309 (James B. Cogbill's 27 May 2021 Memorandum of Record re Exigency for Disenrollment Board Proceedings for plaintiff).

On 19 August 2021, Colonel Thompson, plaintiff's brigade commander, concurred with Colonel Cogbill's recommendations. *See* AR at 215 (19 Aug. 2021 Mem. re Pl.'s Disenrollment Recommendation for Cadet Scholarship). On 28 June 2022, Major General Davis, U.S. Army Cadet Command, disenrolled plaintiff and ordered he pay the $121,013.50 spent by the Army in support of his education. *See* AR at 213–14 (28 June 2022 Mem. re Disenrollment from U.S. Army ROTC Program).

After completing college and receiving his degree, plaintiff "was initially employed from May 2021 to February 2022 by Immersion Consulting LLC," and since February 2022 has "been employed with Booz Allen Hamilton." AR at 31 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application). "Both positions required [plaintiff] have a TS/SCI Clearance," which he has maintained since his initial approval in April 2021. AR at 31 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application). Moreover, plaintiff has "maintained a completely clean criminal record." AR at 31 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application).

## B.    Advisory Opinion and the ABCMR's Decision

On 19 December 2022, plaintiff filed an application with the ABCMR. *See* AR at 23–150 (Pl.'s 19 Dec. 2022 Application for Correction of Military R. under 10 U.S.C. § 1552 and Attachs.); AR at 151–212 (Attachs. to Pl.'s 19 Dec. 2022 Application for Correction of Military R. under 10 U.S.C. § 1552). In his application, plaintiff wrote a letter to the Board, "request[ing] correction of [his] military service record and relief from [his] indebtedness." AR at 28 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application). Specifically, plaintiff

---

[GOVERNMENT:] I think what it's saying is that . . . if you are not going to require a re[coupment] or a call to active duty, . . . then you need the complete written justification. . . . [But] we didn't understand that to be an issue in this case. . . . [PLAINTIFF:] I don't have anything further."). As plaintiff does not request active duty, the issue of whether this was arbitrary and capricious is not before the Court. *See* Tr. at 12:19–13:6 ("THE COURT: Did Plaintiff request active duty in lieu of monetary payback? . . . [PLAINTIFF:] Before the ABCMR, no. . . . THE COURT: So is this issue part of Plaintiff's grounds for error on the part of the ABCMR? [PLAINTIFF:] It is not.").

stated: "I am requesting that my debt to the U.S. Government as a result of my Disenrollment be forgiven because of material legal errors committed by Army ROTC during the process, as well as the inequity and injustice imposed upon me when considering all facts and circumstances of what happened. In the alternative, I recognize that I did receive a substantial amount of money from the U.S. Government for tuition and I did not serve any time in the Army. If the Board determines that there were legal errors and/or that my separation and resulting debt was either unjust or inequitable but also determines that complete debt relief is not an equitable result, I respectfully request a reduction of 50% of the debt owed." AR at 28 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application). Plaintiff argued given his approved security clearance and the board's recommendation he be allowed to enlist instead of incurring a debt, it was unjust to charge him the full cost of his tuition. *See* AR at 32 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application).

Plaintiff further claimed material legal errors existed in his disenrollment process. *See* AR at 28 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application). First, plaintiff believed no contract or regulation required him to self-report drug use as a member of the ROTC, and his use of illegal drugs did not violate the terms of his contract because he was not subject to the Uniform Code of Military Justice. *See* AR at 32 (Pl.'s 19 Dec. 2022 Letter re Records Correction Application), 48 (Pl.'s Attorney's 17 Nov. 2022 Letter re Pl.'s Disenrollment). Second, plaintiff averred Colonel Cogbill erred when he appointed a Captain to be the president of the Disenrollment Board because Army policy required that the president be a field grade officer or, in the alternative, that Colonel Cogbill make a contemporaneous determination in writing that a field grade officer is "not practical due to military exigencies." *See* AR at 49 (Pl.'s Attorney's 17 Nov. 2022 Letter re Pl.'s Disenrollment) (citing USACC Pam 145-5 ¶ 8-3d). Third, plaintiff contended he was not read his rights under Article 31 of the Uniform Code of Military Justice using the Army's rights warning form. *See* AR at 49 (Pl.'s Attorney's 17 Nov. 2022 Letter re Pl.'s Disenrollment). Plaintiff lastly argued he was never advised of his rebuttal rights by Colonel Cogbill after the Disenrollment Board made findings and recommendations, and had he been properly advised of his rebuttal rights, he would have presented the same legal errors to the Disenrollment Board. *See* AR at 50–51 (Pl.'s Attorney's 17 Nov. 2022 Letter re Pl.'s Disenrollment).

"On 30 May 2023, in the processing of this case, the Office of the Deputy Chief of Staff G1 ("ODCS") provided an advisory opinion regarding the applicant's request for remission or cancellation of ROTC indebtedness." AR at 16 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote); *see* AR at 22 (ODCS's 30 May 2023 Advisory Opinion regarding ROTC Scholarship Debt Relief). The Advisory Opinion stated: "After careful review our office recommends the [B]oard to disapprove the applicant's request. Based on ROTC contract . . . signed 5 September 2017, [plaintiff] acknowledged reasons for Government reimbursement if service obligation is not met." AR at 22 (ODCS's 30 May 2023 Advisory Opinion regarding ROTC Scholarship Debt Relief). "On 5 June 2023, the Army Review Boards Agency Case Management Division provided the applicant the advisory opinion for review and comment. He did not respond." AR at 16 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote); *see* AR at 21 (Department of the Army's 5 June 2023 Notification of ODCS's Advisory Opinion).

On 17 October 2023, in a unanimous decision, the three-member ABCMR adopted the Advisory Opinion's recommendation and held: "The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned." AR at 18 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote); *see* AR at 1 (20 Oct. 2023 Decision letter from ABCMR Director) (informing plaintiff of denial of his application). In denying plaintiff's application, the ABCMR reasoned:

1. The Board determined the evidence of record was sufficient to render a fair and equitable decision. As a result, a personal appearance hearing is not necessary to serve the interest of equity and justice in this case.

2. After reviewing the application, all supporting documents, and the evidence found within the military record, the Board found that relief was not warranted. The applicant's contentions, the military record, and regulatory guidance were carefully considered.

    a. The evidence of record confirms the applicant was accepted into an Army ROTC scholarship program. He fully understood and accepted the terms of his enrollment when he authenticated his contract. He agreed that if he were disenrolled from the ROTC Program for any reason, he would have to repay his scholarship debt or be ordered to active duty in the rank/grade of PV1/E-1 for an appropriate number of years. He breached the terms of the ROTC contract by use of a controlled substance and failure to disclose use of the controlled substance.

    b. As he was found in breach of his ROTC contract, he was accordingly notified of his disenrollment from the program. His case was considered by a disenrollment board and that board found he did breach the terms of the ROTC contract in whole or in part due to undesirable character as demonstrated by use of a controlled substance and failure to disclose use of a controlled substance. The disenrollment board determined he should not be retained as a scholarship or as a non-scholarship cadet and he should be required to repay the indebtedness; not be retained. The disenrollment board determined he should be ordered to active duty in enlisted status if DOD CAF determined positive eligibility. The recommendations of the board were approved.

    c. The Board determined the applicant entered into a valid Army ROTC Cadet Contract. He received advanced educational assistance in the form of ROTC scholarship monies from the U.S. Government in an amount that that constitutes a valid debt to the U.S. Government. There are two ways for an ROTC debt to be remitted: either repayment of the educational debt or service as an enlisted member of an active component. The Board found no evidence the applicant enlisted in a regular component in the grade of private/E-1.

AR at 16–17 (17 Oct. 2023 ABCMR Record of Proceedings and Board Vote).

## II.    Procedural Background

After the ABCMR's vote, plaintiff filed his complaint with this court on 19 July 2024. *See* Compl., ECF No. 1.  On 19 October 2024, the government filed a motion to dismiss for lack of subject-matter jurisdiction, arguing statutes, rather than contracts, "are the exclusive source of law governing the compensation rights of members of the military." *See* Gov't's Mot. to Dismiss ("MTD") at 4 (citation omitted), ECF No. 6.  On 14 November 2024, plaintiff filed a motion for leave to amend the complaint, rendering the government's Motion to Dismiss moot. *See* Pl.'s Mot. for Leave to Am. the Compl. ("Pl.'s Mot."), ECF No. 7.  On 15 November 2024, the government filed a response explaining it did not oppose plaintiff's motion. *See* Gov't's Resp. to Pl.'s Mot. ("Gov't's Resp."), ECF No. 8.  On 18 November 2024, the Court granted plaintiff's Motion for Leave to Amend the Complaint. *See* 18 November 2024 Order, ECF No. 9.

On 19 November 2024, plaintiff filed its First Amended Complaint. *See* Am. Compl., ECF No. 10.  On 4 December 2024, the parties filed a joint motion for scheduling order, proposing filing and briefing deadlines. *See* Joint Mot. for Scheduling Order, ECF No. 11.  The same day, the Court granted the motion in a non-PDF Order.

On 3 January 2025, the government filed the Administrative Record. *See* AR Certificate of Authenticity at 1.  On 31 January 2025, plaintiff filed his MJAR. *See* Pl.'s MJAR.  On 14 March 2025, the government responded and filed its Cross-MJAR. *See* Gov't's Cross-MJAR and Resp. to Pl.'s MJAR ("Cross-MJAR"), ECF No. 15.  On 4 April 2025, plaintiff replied and responded to the government's Cross-MJAR. *See* Pl.'s Reply and Resp. to Gov't's Cross-MJAR ("MJAR Reply"), ECF No. 16.  On 25 April 2025, the government replied. *See* Gov't's Reply in Supp. of its Cross-MJAR ("Cross-MJAR Reply"), ECF No. 17.  On 9 May 2025, the government filed an appendix of any agency-specific rules, instructions, policies, and regulations relied on by the parties and not codified in the current version of the Code of Federal Regulations ("CFR"). *See* App. of Agency-Specific Rules, Instrs., Policies, and Regulations, ECF No. 18.  The Court held oral argument on 8 July 2025. *See* 30 May 2025 Order, ECF No. 19; 8 July 2025 Oral Arg. Tr. ("Tr."), ECF No. 21.

## III.    Parties' Arguments

In his opening brief, plaintiff requests the Court:  "(1) set-aside [plaintiff]'s disenrollment[;] (2) cancel [plaintiff]'s indebtedness to the [g]overnment[;] and (3) order the [g]overnment to refund the amount [plaintiff] has paid servicing that debt." Pl.'s MJAR at 1.  In doing so, plaintiff introduces three major arguments and cites several character references and argues "consistent with [his] character, he honestly answered Section 23 of the e-QIP and freely disclosed a limited and experimental use of controlled substances." *Id.* at 2–3; *see* AR at 151–63 (17 Mar. 2021 Board Summarized Transcript), 193–211 (Memoranda in Support of Pl.'s Character Fitness), 330–46 (Memoranda in Support of Pl.'s Character Fitness).

First, challenging procedural violations, plaintiff argues the government "violated Army Regulation 145-1, 10-2(d) and USACC Pamphlet 145-4 ¶ 8-3 when it appointed a captain as president of the Disenrollment Board without contemporaneously documenting whether a field

grade officer was reasonably available or whether a military exigency existed at the time of appointment." *See* Pl.'s MJAR at 9–12 (citation modified). Second, noting Army regulations, plaintiff argues the government "violated USACC pamphlet 145-4, ¶ 8-5 when it did not properly advise [plaintiff] of his rights prior to his testifying before the Disenrollment Board." *Id.* at 12. Specifically, plaintiff argues "the disenrollment hearing transcript only states that [plaintiff] was 'read rights,'" and "there is no evidence [plaintiff] was fully advised of [his] rights at any time during the disenrollment hearing." Pl.'s MJAR at 12–13. Third, plaintiff argues "the board acted arbitrarily and capriciously when it upheld [plaintiff]'s disenrollment without considering the Army's failure to adhere to its established procedures" because the record "demonstrates that the ABMCR entirely failed to consider an important aspect of the problem, namely that [plaintiff]'s disenrollment was procedurally flawed in several respects." *Id.* at 13–14 (citing AR at 7–8 (20 Oct. 2023 Decision letter from ABCMR Director)).

## IV.    Applicable Law

### A.    Judgment on the Administrative Record

For a motion for judgment on the administrative record, plaintiff bears the burden to prove through the administrative record the Board's decision was arbitrary and capricious, contrary to law, or unsupported by substantial evidence. *See Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005). Application of the arbitrary and capricious standard of review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig v. United States*, 719 F.2d 1153, 1157 (Fed. Cir. 1983) (emphasis omitted); *see also Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005) ("[A]n agency action is arbitrary and capricious if the agency . . . has entirely failed to consider an important aspect of the case presented."). So long as the Board followed applicable statutes or regulations, considered the relevant evidence, and reached a reasonable conclusion, a court will not disturb the Board's decision. *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011). A court may set aside an agency's decision if the agency "'entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)) (cleaned up). "Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters." *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953); *see also Roth v. United States*, 378 F.3d 1371 (Fed. Cir. 2004) (citing *Orloff*, 345 U.S. at 94) ("In the military arena, [there is an] admonition against court interference with military matters . . . ."); *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[T]he military is entitled to great deference in the governance of its affairs.").

### B.    ROTC Disenrollment

A cadet's disenrollment from the Army ROTC is governed by Army Regulation ("Army Reg.") 145-1 (dated 22 July 1996)[5] and USACC Pamphlet 145-4 (dated 1 April 2020), Chapter 8, which establish the procedural requirements for removing cadets who fail to meet program standards. The Army may disenroll a cadet for various reasons, including misconduct, breach of contract, or illegal drug use. *See* Army Reg. 145-1 ¶ 3-43a; *see also* USACC Pamphlet 145-4 ¶ 8-2a ("[Army Regulation] 145-1 requires initiation of Cadet disenrollment actions for the bases listed in paragraph 3-43a (1)-(16)."). When a cadet is subject to disenrollment, they are provided with due process protections through written notification, the opportunity to present evidence, and, if required, a disenrollment board hearing. *See* Army Reg. 145-1 ¶ 3-43.

A disenrollment board—appointed by the PMS, brigade commander, or region commander—is convened when a cadet is being considered for disenrollment due to misconduct, failure to meet ethical and character requirements, or contractual breaches. *See id.* ¶ 3-43b; USACC Pamphlet 145-4 ¶ 8-3a. The board consists of a minimum of one officer, and the transcripts of proceedings will be a typed summary of proceedings unless sworn statements were used. *See* USACC Pamphlet 145-4 ¶ 8-3b-c, e. Further, a field grade officer must serve as the board president unless the appointing authority determines, in writing, due to military exigencies appointing such officer is not practical. *See id.* ¶ 8-3d. The parties agreed at oral argument the procedures within USACC Pamphlet 145-4 were binding upon Colonel Cogbill, which "required [him] to appoint the disenrollment board" according to the procedures in the USACC, and Paragraph 8-3d "requires that documentation [of military exigency] to be done at the time of appointment." Tr. 5:24–6:15.

The PMS must notify the cadet of the intent to initiate disenrollment proceedings and include the basis for disenrollment in the notification memorandum. *See* USACC Pamphlet 145-4 ¶ 8-3b-c. The cadet is then placed on Leave of Absence status, suspending scholarship benefits and subsistence allowances. *See id.* ¶ 8-3c; Army Reg. 145-1 ¶ 3-43b–c. Cadets undergoing a disenrollment board are entitled to appear in person, review and challenge evidence, cross-examine and object to the testimony of witnesses, present their own witnesses, introduce evidence in their defense, testify on their own behalf if they choose, challenge board members for bias, and dispute the validity or amount of the proposed debt. *See* Army Reg. 145-1 ¶ 3-43b; USACC Pamphlet 145-4 ¶ 8-5a. They are also entitled to assistance in preparing for the board from a reasonably available military officer, though this officer cannot be serving as a Judge Advocate General. *See* Army Reg. 145-1 ¶ 3-43b; USACC Pamphlet 145-4 ¶ 8-5b(1).

---

[5] "Mr. Moyer incorrectly relies on the 2023 version of Army Reg 145-1. That version of the regulation was not effective until after Mr. Moyer's disenrollment was complete. The 1996 regulation was controlling at the time of Mr. Moyer's disenrollment proceedings in 2022. A Rapid Action Revision of the regulation was issued in 2011 to implement the Don't Ask, Don't Tell Repeal Act of 2010. However, the disenrollment procedures found in ¶ 3-43 were not changed at that time." Tr. at 21:1–14 ("[GOVERNMENT:] Plaintiff's counsel and we were in agreement that [the 1996 and 2011 versions of the relevant Army regulation] are the relevant version for this case. . . . [PLAINTIFF:] That's accurate. . . . THE COURT: [F]or the purposes of this case, there's no material difference between the 1996 version, the 2011 version and the 2023 version? [GOVERNMENT:] I think the 2023 version . . . reorganizes. . . . But as it relates to the 1996 versus the 2011 change, no.").

Cadets may hire civilian counsel at their own expense, but counsel may only provide advice and may not advocate to the board during the hearing. *See* Army Reg. 145-1 ¶ 3-43b; USACC Pamphlet 145-4 ¶ 8-5b. The president of the disenrollment board should advise the cadet of their regulatory rights before the hearing begins, so the cadet fully understands their ability to participate in the proceedings. *See* USACC Pamphlet 145-4 ¶ 8-5a. Additionally, the cadet should be informed that they have the right to remain silent, and that no adverse inference will be drawn from their decision not to testify. *See id.* ¶ 8-5a(4). While DA Form 3881 (Rights Warning Procedure/Waiver Certificate) is recommended for documenting the notification of these rights, its use is not mandatory, as the disenrollment process is administrative, not criminal. *See id.* The board president simply follows a prescribed script when conducting the proceedings. *See id.* ¶ 8-1e.

Following deliberation, the board makes findings and recommendations in light of the evidentiary standard, which is preponderance of the evidence. *See id.* ¶¶ 8-5d, 8-6. The findings and recommendations are reviewed by the appointing authority to ensure compliance with Army policy, and the PMS or other appointing official must indicate concurrence or non-concurrence with each recommendation regarding disenrollment, recoupment, or involuntary active duty. *See id.* ¶ 8-7a–b. If there is any non-concurrence, the appointing authority must explain the basis for the decision in writing. *See id.* The cadet is then provided an opportunity to rebut the board's findings before a final decision is made, and the PMS must notify the cadet of their rebuttal rights and provide them with ten working days from receipt of the findings to submit a rebuttal. *See id.* ¶ 8-7c. Once all rebuttal materials are reviewed, the brigade commander or PMS forwards the board's findings and all supporting documents to the USACC Commanding General for final action. *See id.* ¶ 8-8a(2).

## V.    Whether the Court Has Jurisdiction over Plaintiff's Claims

To properly address jurisdiction, the Court first clarifies the issues presented by plaintiff in his Complaint, briefings, and oral argument; second, the Court reviews the law applicable to ROTC disenrollment cases involving procedural error; and third, the Court analyzes whether it has jurisdiction over plaintiff's claims.

### A.    Parties' Arguments in Their Briefing and at Oral Argument

To clarify plaintiff's claims and requested relief, the Court first reviews their articulation in the Amended Complaint; second, the arguments in plaintiff's Motion for Judgment on the Administrative Record; and third, clarifications made by the parties at oral argument.

#### 1.    Plaintiff's Complaint, Seeking Monetary Damages Based on Breach of Contract and Violation of Regulation

Plaintiff sets out four counts in the Amended Complaint, alleging these entitle plaintiff to (1) refund of $12,500 plaintiff paid to DFAS; (2) cancellation of his $120,636.04 debt to the government to repay his ROTC scholarship; (3) other monetary damages, presumably the benefits of the eighth semester; and (4) costs. *See* Pl.'s Am. Compl. at 16–17.

- 13 -

In Counts I and II, plaintiff alleges breach of contract. In Count I, plaintiff alleges the Army "breached the [ROTC] Contract by not performing its financial obligation to provide [p]laintiff tuition, fees, books and laboratory expenses, and monthly subsistence costs for four years," by "den[ying] [p]laintiff's commission," and "by not adhering to Army Regulations when it disenrolled plaintiff from the ROTC program." *Id.* ¶¶ 114–16. As the Army was in breach while "[p]laintiff fully performed his obligations under the Contract, . . . [p]laintiff is entitled to full benefits of the Contract, including but not limited to the payment of ROTC scholarship benefits for the Spring 2021, . . . reimbursement of the payments made to DFAS since October 2022, and remission of [p]laintiff's $120,636.04 debt to the [g]overnment." *Id.* ¶¶ 112, 117–18. In Count II, plaintiff alleges the same underlying facts—wrongful disenrollment—and claims the government "breached the [c]ontract by breaching the covenant of good faith and fair dealing," entitling plaintiff to "full benefits of the Contract, including but not limited to the payment of ROTC scholarship benefits for the Spring 2021, . . . reimbursement of the payments made to DFAS since October 2022, and remission of [p]laintiff's $120,636.04 debt to the [g]overnment." *Id.* ¶¶ 125–27. Plaintiff argues the Court possesses jurisdiction over these two counts under the Tucker Act because plaintiff seeks monetary relief—the entitlement to which is "founded . . . upon any express or implied contract with the United States." *Id.* ¶¶ 14–15.

In Count III, plaintiff argues 10 U.S.C. §§ 2005 and 2107 are money-mandating statutes which entitle ROTC cadets to financial assistance. As plaintiff "was wrongfully disenrolled from the ROTC program, . . . [p]laintiff is entitled to the financial assistance that he would have received but for his wrongful disenrollment from the ROTC program," namely, a semester of financial assistance. *Id.* ¶¶ 132–33.

In Count IV, plaintiff argues the ABCMR acted arbitrarily and capriciously "when it disenrolled Plaintiff from the ROTC program" because of plaintiff's voluntary self-reporting marijuana use, "when it violated Army [r]egulations," when it did not order plaintiff "to enlist in lieu of monetary repayment when [p]laintiff received his TS/SCI clearance," and when "it failed to notify [p]laintiff of his disenrollment." *Id.* at 16. Plaintiff does not request active duty, instead requesting the Court "cancel [p]laintiff's remaining indebtedness to the U.S. [g]overnment, and order [d]efendant to refund the $12,500.00 already paid to DFAS." *Id.*

## 2. Plaintiff's MJAR Arguments

In the Motion for Judgment on the Administrative Record, plaintiff requests the Court "set aside [plaintiff]'s disenrollment[,] cancel [plaintiff]'s indebtedness to the [g]overnment[,] and order the [g]overnment to refund the amount [plaintiff] has paid servicing that debt." Pl.'s MJAR at 1. Plaintiff makes three primary arguments this relief is required: (1) breach of contract by appointing a non-field-grade officer as board president without documenting military exigency; (2) breach of contract by not properly advising plaintiff of his rights; and (3) the ABCMR acted arbitrarily and capriciously. *See id.* at 8–9, 12.

First, plaintiff argues the Army "breached its contract with Mr. Moyer," *see id.* at 1, when it "violated Army Regulation 145-1, 10-2(d) and USACC Pamphlet 145-4 ¶ 8-3 by appointing a Captain as president of the Disenrollment Board without contemporaneously documenting whether a field grade officer was reasonably available or whether a military exigency existed at

the time of appointment." *See* Pl.'s MJAR at 9–12 (citation modified). Plaintiff contends the president of the Disenrollment Board must be a field grade officer unless military exigency makes such an officer not reasonably available, but notes "in those circumstances, contemporaneous written documentation of the exigency is required." *See id.* at 10–11. Even though a "Cap[tain] was named the Disenrollment Board president, . . . no contemporaneous written documentation of any military exigency was made by Col[onel] Cogbill" until "71 days after the disenrollment proceeding and 57 days after Col[onel] Cogbill recommended approval of the Disenrollment Board's findings." *Id.* at 11–12.

Second, plaintiff argues the Army "breached its contract with Mr. Moyer" by "violat[ing] USACC pamphlet 145-4, ¶ 8-5 when it did not properly advise [plaintiff] of his rights prior to his testifying before the Disenrollment Board." *Id.* at 1, 11–12. Specifically, plaintiff argues "the disenrollment hearing transcript only states that [plaintiff] was 'read rights,'" and "there is no evidence [plaintiff] was fully advised of [his] rights at any time during the disenrollment hearing." *Id.* at 12–13. According to plaintiff, "[t]he absence of direct evidence [plaintiff] was fully advised of his rights should weigh against the inference that the Disenrollment Board fully complied with the advisement requirements of [Army regulations]," especially considering plaintiff "has consistently alleged that the Disenrollment Board did not properly or fully advise him of his rights prior to his testimony." *Id.* at 13.

Third, plaintiff argues "the [ABCMR] acted arbitrarily and capriciously when it upheld [plaintiff]'s disenrollment without considering the Army's failure to adhere to its established procedures." *Id.* (citation modified). According to plaintiff, the administrative record "demonstrates that the ABCMR entirely failed to consider an important aspect of the problem, namely that [plaintiff]'s disenrollment was procedurally flawed in several respects." Pl.'s MJAR at 14 (citing AR at 7–8 (20 Oct. 2023 Decision letter from ABCMR Director)). "Rather than properly address [plaintiff]'s contentions," plaintiff contends, the ABCMR "chose to fully disregard the Army's procedural violations and rubber stamped an obviously flawed disenrollment process." *Id.* at 14 (citing AR at 16–17 (20 Oct. 2023 Decision letter from AR Director)). Plaintiff concludes "[t]he Army's [] procedural errors were not harmless but were prejudicial as there is no evidence that the [ABCMR] would have reached the same conclusion regardless of those errors." *Id.*

### 3.    Plaintiff's Clarification at Oral Argument Plaintiff Does Not Seek a Remand

At oral argument, plaintiff confirmed "the bulk" of plaintiff's claim is based on contract theory, not statute. *See* Tr. at 24:21–25:5 ("[PLAINTIFF:] [O]ur view is that by breaching their own regulations, the Army breached the contract with Mr. Moyer. . . . [THE COURT:] [I]s everything underlying your argument based on contract, or is it based off of statute? [PLAINTIFF:] The bulk of it is based on contract."); Tr. at 28:6–22 ("[THE COURT:] [I]t's not a contract theory, then, right? [PLAINTIFF:] I would say it's a contract theory based on . . . the Army's [implicit] promise to adhere to its own regulations. . . . THE COURT: But the Army doesn't adhere to regulations in this case because of a contract; they do it because they're ordered under primary statute from Congress to do so. [PLAINTIFF:] [T]hey still promised Mr. Moyer specifically they would adhere to that when they signed the contract."); Tr. at 29:20–21

- 15 -

("THE COURT:  What's Count I?  [PLAINTIFF:]  Count I is breach of contract.").  The Court asked whether plaintiff requested remand to the ABCMR, or active duty in lieu of repayment, but plaintiff clarified he is only requesting:  (1) the remainder of the financial assistance plaintiff did not receive after disenrollment; (2) remission of debt; and (3) reimbursement of debt already paid.  *See* Tr. at 29:22–30:5 ("[THE COURT:]  [W]hat is your relief requested? . . . [PLAINTIFF:]  The full benefits of his contract with ROTC, . . . [as] he did not receive the eighth semester[;] debt remission[;] and reimbursement of the money paid to Defense Financial Accounting Services.").  Plaintiff expressly clarified plaintiff was not seeking a remand to the ABCMR.  *See* Tr. at 51:16–24 ("[THE COURT:]  [I]s Plaintiff asking for a remand? [PLAINTIFF:]  No . . . we're not.  [THE COURT:]  Only asking for payment?  [PLAINTIFF:] Yes. . . . [THE COURT:]  [N]ot even a remand . . . under arbitrary and capricious standards? . . . [PLAINTIFF:]  [N]o."); Tr. at 12:19–13:6 ("[THE COURT:]  Did Plaintiff request active duty in lieu of monetary payback? . . . [PLAINTIFF:]  Before the ABCMR, no. . . . [THE COURT:]  So is this issue part of Plaintiff's grounds for error on the part of the ABCMR?  [PLAINTIFF:]  It is not.").  The Court also asked plaintiff to clarify whether plaintiff's MJAR argues 10 U.S.C. §§ 2005 and 2107 were violated; plaintiff admitted the MJAR was "inarticulate in referencing [sections] 2005 or 2007."  Tr. at 42:5–11.

Taken together, plaintiff's four counts collapse into three claims:  (1) the Army breached the scholarship contract with plaintiff, and the implied covenant of good faith, by failing to follow its disenrollment regulations (breach of contract); (2) the Army violated 10 U.S.C. §§ 2005 and 2007 by failing to follow its disenrollment regulations (violation of statute); and (3) the decision of the ABCMR was arbitrary and capricious because it upheld the disenrollment decision despite the alleged failure to follow Army regulations (arbitrary decisionmaking).  *See* Tr. at 28:4–10 ("[PLAINTIFF:  I would say it's a contract theory [because] implicit in the agreement between the parties was the Army's promise to adhere to its own regulations.  So that's where the breach comes from."); Tr. at 37:2–9 ("[PLAINTIFF:]  [O]ur argument boils down to these statutes entitled [plaintiff] to money as a scholarship ROTC cadet . . . [a]nd had the Army not breached th[e] contract by violating its regulations, [plaintiff] would have received the monetary payment); Pl.'s MJAR at 14 ("Rather than properly address Mr. Moyer's contentions, the Board chose to fully disregard the Army's procedural violations and rubber stamped an obviously flawed disenrollment process.).  As relief, plaintiff has expressly disclaimed either remand or ordering plaintiff to active duty in lieu of repayment.  Tr. at 12:19–13:6, 51:16–24.  Instead, plaintiff seeks to have his debt to the United States cancelled, be awarded the scholarship money he would have earned absent disenrollment with interest, and remittance of any money already paid to the United States.  *See* Am. Compl. at 16–17.

## B.    Applicable Law

Having clarified plaintiff's claims, the Court reviews caselaw for ROTC disenrollment, procedural error involving board composition, contract claims involving military compensation, and 10 U.S.C. §§ 2005 and 2107.

### 1.    Cases where the Court of Federal Claims Has Exercised Jurisdiction Over ROTC Disenrollment

The Court of Federal Claims has previously exercised jurisdiction over cases in which an ROTC cadet is disenrolled for breach of contract. *See, e.g.*, *Kennedy v. United States*, 124 Fed. Cl. 309 (2015), *rev'd on other grounds*, 845 F.3d 1376 (Fed. Cir. 2017); *Neutze v. United States* 88 Fed. Cl. 763 (2009). In *Kennedy v. United States*, plaintiff was disenrolled from Navy ROTC for emotional instability. *See* 124 Fed. Cl. at 315–16. The Board for Correction of Naval Records ("BCNR") upheld his disenrollment but granted plaintiff's request to remit his debt for financial assistance because the disenrollment was procedurally defective. *See id.* On review, the Court of Federal Claims upheld the disenrollment. *See id.* at 334. On appeal, the Federal Circuit noted "the Court of Federal Claims properly asserted jurisdiction over, and decided" the parties arguments related to "whether a statute or regulation had been violated in connection with his disenrollment from NROTC." *Kennedy*, 845 F.3d at 1381. The Federal Circuit ultimately reversed on nonjurisdictional grounds and remanded the case to the BCNR. *See Kennedy*, 845 F.3d at 1383. Similarly, in *Neutze v. United States*, plaintiff failed an Army physical fitness test and retest. 88 Fed. Cl. 763, 766 (2009). She was notified of disenrollment proceedings and requested the appointment of an Investigating Officer ("IO"). *See id.* The IO recommended plaintiff should be disenrolled from ROTC and ordered to repay her scholarship debt, a recommendation the Commanding General of the Army Cadet Command approved. *Id* at 766–67. Plaintiff appealed to the Army Board of Correction of Military Records ("ABCMR"), an appeal which was unanimously denied. *See id.* The Court of Federal Claims granted the government's MJAR upholding the ABCMR's decision, noting the court properly had jurisdiction over the claims because the "Court of Federal Claims has authority to ascertain the procedural validity of a military decision that affects a monetary entitlement." *See id.* at 768. *Kennedy* and *Neutze* demonstrate this court's jurisdiction to adjudicate the procedural validity of ROTC disenrollment procedures where those procedures affect a plaintiff's right to money from the federal government.

## 2.    Cases in which Military Compensation is Not Governed by Contract Law

In cases where a military member claims entitlement to military compensation such as pay or medical benefits, the member must base their claim on statutes, not contracts. *See Bell v. United States*, 366 U.S. 393, 394–96 (1961). In *Bell*, American POWs during the Korean War collaborated with their captors and defected to China. *See id.* When they returned to the United States, they filed suit in the Court of Claims for pay from the time of their imprisonment until their formal discharge from the Army. *See id.* The government argued plaintiff breached their contract with the government by collaborating with Communists. *See id.* at 401–02. The Supreme Court disagreed, holding "common-law rules governing private contracts have no place in the area of military pay," and thus a soldier who has not been sentenced to forfeiture of pay at "a duly constituted court-martial is entitled to the statutory pay and allowances." *Id.* The plaintiffs in *Bell* could not therefore forfeit their right to statutorily-mandated pay merely on a breach of an enlistment contract. *Id.*

The Federal Circuit extended this logic to all military compensation claims. *See Schism v. United States*, 316 F.3d 1259, 1272 (Fed. Cir. 2002) (en banc); *Prestidge v. United States*, 611 Fed. App'x 979, 981 (Fed. Cir. 2015) ("[M]ilitary pay and benefits are established only by statutes and regulations, not by enlistment contracts enforceable through damages remedies.");

*see also Kennedy v. United States*, 124 Fed. Cl. 309, 323–25 (2015), *rev'd in part on other grounds*, 845 F.3d 1376 (Fed. Cir. 2017). In *Schism*, military retirees alleged they had been promised free medical care for life by their recruiters, but did not receive it after the implementation of Tricare. *See* 316 F.3d at 1262. The Federal Circuit held "[s]tatutes are the exclusive source of law governing the compensation rights of members of the military." *Id*. at 1272.

### 3.    Money-Mandating Nature of 10 U.S.C. §§ 2005 and 2107

To establish a constitutional provision, statute, or regulation as money-mandating under the Tucker Act, "the [plaintiff] 'must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties.'" *United States v. Navajo Nation*, 556 U.S. 287, 290 (2009) (quoting *United States v. Navajo Nation*, 537 U.S. 488, 506 (2003)). "[T]he court must then determine whether the relevant source of substantive law 'can fairly be interpreted as mandating compensation for damages sustained as a result of a breach of the duties [the governing law] impose[s].'" *Id.* at 291 (quoting *Navajo Nation*, 537 U.S. at 506). To incentivize recruitment, 10 U.S.C. § 2107(c)(1) provides the Secretary of the Army "may provide for the payment of all expenses in his department of administering the financial assistance program under this section, including tuition, fees, books, and laboratory expense." If a cadet fails to abide by the terms of the agreement, however, they shall be obliged to repay the financial assistance given, subject to repayment through active military service. 10 U.S.C. § 2005(c).

In *Kennedy*, this court held 10 U.S.C. §§ 2005 and 2107 are money-mandating: "under 10 U.S.C. § 2005 and 10 U.S.C. § 2107, once the Secretary of the Navy provides financial assistance to an eligible student in the NROTC, the student is entitled to that financial assistance unless and until that entitlement is lawfully terminated due to the student's failure to fulfill the terms of the scholarship agreement. There is, consequently, a money-mandating basis for plaintiff's claim for the scholarship benefits that he would have received had he not been disenrolled from the NROTC." 124 Fed. Cl. at 325–26. "In other words, a contract between the federal government and a service member is judicially enforceable only if the reason for the contract has no bearing on the service member's enlistment or military service." *Id.* at 325. The Federal Circuit did not review this issue, as plaintiff did not appeal his "contract-based claims," and the Federal Circuit found it "thus need not consider those claims." *Kennedy v. United States*, 845 F.3d 1376 (Fed. Cir. 2017).

### C.    Whether the Court Has Jurisdiction over Plaintiff's Claims

Having clarified plaintiff's claims and reviewed the applicable law, the Court turns to analyze whether it has jurisdiction over plaintiff's three claims, in order—(1) breach by the Army of plaintiff's ROTC contract and the implied duty of good faith; (2) violation of 10 U.S.C. §§ 2005 and 2107; and (3) arbitrary and capricious decision-making by the ABCMR in upholding plaintiff's disenrollment. The Court then determines whether it has the power to grant any of plaintiff's requested relief.

1.    **Whether Plaintiff's Counts I and II Are Based On Statutes or Regulations As Required Under Federal Circuit Precedent for Compensation**

Plaintiff's first two counts are:  (1) breach of plaintiff's ROTC contract by the Army; and (2) breach of the implied covenant of good faith and fair dealing by the Army.  *See* Am. Compl. ¶¶ 106–127.  These two claims, considering they allege breach of *contract*, rely on common law rules of governing private contracts for plaintiff's military pay claim, and plaintiff confirmed "[t]he bulk of it[s claims] are based on contract" and rely on "a contract theory based on . . . the Army's [implicit] promise to adhere to its own regulations." Tr. at 24:21–25:5, 28:6–22; *see also supra* Section V.A.1.  "[C]ommon law rules governing private contracts have no place in the area of military pay," *Bell*, 366 U.S. at 401, because "[s]tatutes are the exclusive source of law governing the compensation rights of members of the military, *Schism*, 316 F.3d at 1272. *See also Prestige*, 611 Fed. App'x. at 982 ("[M]ilitary pay and benefits are established only by statutes and regulations, not by enlistment contracts enforceable through damages remedies."). For example, this court, in *Kennedy v. United States*, held it lacked jurisdiction over the plaintiff's breach-of-contract claims because "an enlistment agreement cannot constitute [a] money-mandating source of law in a military pay case." 124 Fed. Cl. 309, 324, 325–26. Considering Counts I and II are based solely on a common law breach of contract claim and given plaintiff has not offered a money-mandating statute upon which to establish his contract claim, the Court lacks jurisdiction over Counts I and II.  *See Schism*, 316 F.3d at 1272 ("[S]tatutes are the exclusive source of law governing the compensation rights of members of the military."); *Prestige*, 611 Fed. App'x. at 982 ("[M]ilitary pay and benefits are established only by statutes and regulations, not by enlistment contracts enforceable through damages remedies."); *Bell*, 366 U.S. at 401 ("[C]ommon law rules governing private contracts have no place in the area of military pay.").

2.    **Whether Plaintiff's Count III Flows From Plaintiff's Contract Claims**

In Count III, plaintiff claims the Army contravened 10 U.S.C. §§ 2005 and 2107 because it agreed in its contract with plaintiff to adhere to its regulations, and if the Army had not violated those regulations when it disenrolled plaintiff, plaintiff would have been entitled to monetary payments.  *See* Pl.'s Am. Compl. ¶¶ 128–33.  Plaintiff claims §§ 2005 and 2107 are money-mandating statutes which grant this court jurisdiction under the Tucker Act to hear his claim.  *Id*.  Plaintiff does not mention either §§ 2005 or 2107 in the MJAR, and plaintiff confirmed at oral argument "it's possible our MJAR was inarticulate in referencing" either statute.  Tr. at 42:10–11.

First, plaintiff argues the statutes were violated by the Army's breach of the implied covenant of good faith and fair dealing.  *See id.* ¶ 124 ("Defendant failed to comply with its laws and Army Regulations governing SROTC, thereby breaching its covenant of good faith and fair dealing in performance of the Contract."); Tr. at 51:8–10 ("[T]he money-mandating side of it is what naturally flows from the breach of agreement").  "In order to invoke successfully the jurisdiction of the Court of Federal Claims pursuant to the Tucker Act, a plaintiff must identify a right to money damages found in the Constitution, a statute or government regulation, or a contract."  *Folden v. United States*, 379 F.3d 1344, 1354–55 (Fed. Cir. 2004)).  Further, plaintiff

- 19 -

"must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983). Contract law alone gives no jurisdiction in cases involving military compensation. *See supra* Section VI.C.1. Plaintiff has not pointed to any passage in 10 U.S.C. §§ 2005 or 2107 which requires the Army to abide by any covenant of good faith and fair dealing. Plaintiff draws implicitly from a contract claim, and insofar as plaintiff relies on contract principles inapplicable to military compensation, the Court lacks jurisdiction. *See Schism*, 316 F.3d at 1272 ("[S]tatutes are the exclusive source of law governing the compensation rights of members of the military."); *Prestige*, 611 Fed. App'x. at 982 ("[M]ilitary pay and benefits are established only by statutes and regulations, not by enlistment contracts enforceable through damages remedies.").

Second, plaintiff's Amended Complaint references two statutes which supposedly entitle him to monetary compensation—10 U.S.C. §§ 2005 and 2107. *See* Pl's Am. Compl. ¶¶ 129–30. To recover in the Court of Federal Claims, plaintiff must show his entitlement to monetary relief flows from a money-mandating statute, not simply from enforcement of the ROTC contract. *See supra*. At oral argument, plaintiff explained "the money-mandating side of [plaintiff's claim] flows from the breach of agreement." Tr. at 51:8–9. As explained *supra*, the Court lacks jurisdiction to enforce the provisions of plaintiff's ROTC contract, and considering the "money-mandating" aspect of plaintiff's claim "flows from" his breach of contract claim, the Court likewise lacks jurisdiction to adjudicate plaintiff's claim regarding the Army violating §§ 2005 or 2107 by failing to follow its own regulations when disenrolling plaintiff. *See Schism*, 316 F.3d at 1272 ("Statutes are the exclusive source of law governing the compensation rights of members of the military.").

### D.    Whether Plaintiff Breached the Terms of the ROTC Contract

Even if the Court had jurisdiction to provide relief to plaintiff, the Court must determine whether plaintiff first breached the contract. Plaintiff's ROTC contract forbid the use of illicit drugs. *See* AR at 41 (Signed and Dated ROTC Enlistment Contract) (consenting to drug screening and stating "[i]f the result of any test is positive, I will be subject to disenrollment from the ROTC program"); Tr. at 52:22–25 ("[THE COURT:] Do you agree that the ROTC contract . . . explicitly forbids the use of illicit drugs? [PLAINTIFF:] Yes."). The contract further required plaintiff to "inform the PMS of any change in [his] eligibility (*medical or non-medical*)" to participate in the ROTC program. AR at 45 (Signed and Dated ROTC Enlistment Contract); Tr. 53:5–7 ("THE COURT: The ROTC contract also required voluntary disclosure of the use of illicit drugs[?] [PLAINTIFF:] Yes."). The contract also gave the Army discretion to require plaintiff to "reimburse the United States government" for any financial assistance given if he is "disenrolled from the ROTC program for breach of contractual terms." AR at 44 ((Signed and Dated ROTC Enlistment Contract); *see* Tr. at 54:1–8 ("THE COURT: [T]he ROTC contract requires Plaintiff to pay back financial assistance received from the Government. Correct? [PLAINTIFF:] Yes, in part B there, 5(B)."). Plaintiff confirmed at oral argument plaintiff admits to "us[ing] illicit drugs between 2018 and 2019" while under the strictures of the contract and plaintiff did not disclose[] the use of the illicit drugs [until] December of 2020." Tr. at 53:9–14. Plaintiff even conceded "under the four corners of the contract, [p]laintiff was properly disenrolled and required to repay." Tr. at 54:23–55:2. Plaintiff's use of illicit drugs while under

- 20 -

the ROTC contract and subsequent failure to "inform the PMS" of his disqualifying drug use constitutes a breach of his agreement with the Army. *See* AR at 41, 44 (Signed and Dated ROTC Enlistment Contract). Accordingly, as plaintiff has conceded, plaintiff's prior breach of the contract entitled the Army to disenroll plaintiff from the ROTC program. *See* AR at 44 (Signed and Dated ROTC Enlistment Contract).

Plaintiff, despite admitting he breached the ROTC contract and he "did receive a substantial amount of money from the U.S. Government for tuition and [] did not serve any time in the Army," AR at 28 (Pl.'s 19 Dec. 2022 Records Correction Application), requests the Court "[c]ancel or remit [p]laintiff's indebtedness owed to the U.S. [g]overnment" because doing so would be fair. *See* Am. Compl. at 16–17; *see also* Tr. at 76:14–25. Plaintiff could not offer "any case law" in support of his argument either in his briefs or at oral argument. *See* Tr. at 76:25–77:3.[6] Any unfairness, real or imagined, cannot alter the conclusion plaintiff knowingly breached the ROTC contract by using illicit drugs while he was a cadet at Virginia Tech. *See supra*. Even if the Court had jurisdiction over plaintiff's breach of contract claims, plaintiff's own breach prevents the Court from enforcing the contract in his favor under mere "fairness" concerns.

## VI.    Whether the Alleged Procedural Defect Related to the Appointment of the Disenrollment Board President Constituted a Harmless Error and Whether the Alleged Error Was Arbitrary and Capricious

In the MJAR, plaintiff argues the ABCMR's decision was arbitrary and capricious because a non-field-grade officer presided over the disenrollment hearing and no written documentation of any military exigency was contemporaneously recorded justifying the lack of non-field-grade officer on the Board. *See* Pl.'s MJAR at 9–12. Plaintiff asserts this error in the composition of the board is fatal to the proceedings, and therefore harmless error review cannot apply. *See id.* The government argues the ABCMR's decision was proper because any error was harmless. *See* Gov't's CMJAR at 16. First, the Court examines plaintiff's arguments related to the failure to contemporaneously document military exigency. Second, the Court reviews the applicable caselaw regarding when harmless error review is appropriate to apply. Third, the Court will analyze three issues: (1) whether harmless error review applies to plaintiff's statutory claim; (2) whether, if harmless error review does not apply, plaintiff can obtain any relief; and (3) whether plaintiff can obtain relief on any other claim where he does not seek remand.

### A.    Plaintiff's Arguments

Plaintiff argues the government "violated Army Regulation 145-1, 10-2(d) and USACC Pamphlet 145-4 ¶ 8-3 when it appointed a captain as president of the Disenrollment Board without contemporaneously documenting whether a field grade officer was reasonably available

---

[6] Indeed, plaintiff appeared to recognize the unfairness inherent in his own position during a colloquy with the Court at oral argument. The Court observed "people have scholarships to go to college because of different things, whether it be football or good grades or ROTC." Tr. at 78:7–9. Just as it would be unfair for a student with bad grades or who didn't play football to receive a scholarship for these things, "unfair would be receiving an ROTC scholarship if you didn't serve later in the military." Tr. at 78:10–14. When asked why it is then unfair for plaintiff to repay his ROTC scholarship when he will not be serving in the military, plaintiff's counsel responded that should be "left in the discretion of the Court," but plaintiff could "see [the Court's] point." Tr. at 78:19–22.

or whether a military exigency existed at the time of appointment." *See* Pl.'s MJAR at 9–12 (citation modified). Noting "Army Regulations guarantee certain rights to ROTC cadets during disenrollment proceedings," and "[c]ompliance with these regulatory requirements is vital to ensure that each cadet receives fair and not disparate treatment," plaintiff argues he "did not receive fair treatment during his disenrollment because the Army violated established disenrollment procedures." *See id.* at 10–11. Plaintiff contends a field grade officer had to serve as the president of the Disenrollment Board *unless* a field grade officer was not reasonably available or a military exigency prevented the appointment of a field grade officer and "contemporaneous written documentation of the exigency is required." *See id.* Specifically, plaintiff clarified "the failure to *contemporaneously document* the exigency renders the Board's composition improper." Tr. at 68:22–24 (emphasis added). Even though a "Cap[tain] was named the Disenrollment Board president, . . . no contemporaneous written documentation of any military exigency was made by Col[onel] Cogbill" until "71 days after the disenrollment proceeding and 57 days after Col[onel] Cogbill recommended approval of the Disenrollment Board's findings." Pl.'s MJAR at 11–12. Plaintiff argues "the board acted arbitrarily and capriciously when it upheld [plaintiff]'s disenrollment without considering the Army's failure to adhere to its established procedures." *Id.* (citation modified). According to plaintiff, the AR "demonstrates that the ABMCR entirely failed to consider an important aspect of the problem, namely that [plaintiff]'s disenrollment was procedurally flawed in several respects." *Id.* at 14 (citing AR at 7–8 (20 Oct. 2023 Decision letter from ABCMR Director)). "Rather than properly address [plaintiff]'s contentions," plaintiff contends, the ABCMR "chose to fully disregard the Army's procedural violations and rubber stamped an obviously flawed disenrollment process." *Id.* at 14. Plaintiff concludes "[t]he Army's [] procedural errors were not harmless but were prejudicial as there is no evidence that the [ABCMR] would have reached the same conclusion regardless of those errors." *Id.*

### B.    Relevant Caselaw

When a procedural error causes a fundamental error—including errors causing the decision-making body to be improperly constituted—a court normally "will not speculate as to what the outcome might have been had the error not occurred." *Wagner v. United States*, 365 F.3d 1358, 1364–65 (Fed. Cir. 2004). In *Wagner*, a reserve Army officer was court-martialed and fined, and the Department of the Army Active Duty Board intended to consider releasing him from active duty. *Id.* at 1359–60. Regulations require the Secretary of the Army to approve all separations of officers with 18 or more years of active federal service, like Wagner, prior to separation proceedings, but the Secretary did not approve the proceedings until after the board decided to separate Wagner. *See id.* The Federal Circuit held harmless error review is improper when either "the error is 'fundamental'" or it is unlikely the court can predict the harm done by the error. *Id.* at 1363. The panel articulated "two justifications for refusing to apply the harmless error rule: (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error." *Id.* at 1363. Where either of these factors are present, "the effect of the error on the outcome of a proceeding is unquantifiable . . . [and the Court] will not speculate as to what the outcome might have been had the error not occurred." *Id.* at 1365. As the Army in *Wagner* contravened the statutory requirement for the Secretary to preapprove the involuntary release procedures, the panel held Wagner's separation was improper. *Id.* at 1364. The Federal Circuit further held "[the] conclusion that harmless error

review is inappropriate for th[is] type of procedural error . . . recognizes that, while in many cases such review is appropriate, there remain situations in which it is not." *Id.* at 1365; *see also Doyle*, 599 F.2d at 990 (holding harmless error inapplicable where selection board was required to contain a reserve officer, but no reserve officers were present); *Caldbeck v. United States*, 109 Fed. Cl. 519, 534 (2013) (holding the harm caused by Board of Inquiry not including a member in the same competitive category as plaintiff was unknowable, because it would have been a different person with different experience making the decision); *Henderson v. United States*, 175 Ct. Cl. 690, 699 (1966), *cert. denied*, 386 U.S. 1016 (1967) (holding one board member being junior to plaintiff, as well as having only three of five required members, made the proceedings "fatally defective").

In another illustration, in *Doyle v. United States*, plaintiffs were Army Reserve officers who were passed up for promotion and separated from the Army. *See* 599 F.2d at 990. The promotion selection boards, contrary to Army regulation, did not contain any Reserve members. *See id*. Officers are split into two zones based on seniority—primary and secondary—and the Secretary of the Army had directed the maximum allowable percentage of secondary zone officers be selected. *See id*. On petition, the Secretary of the Army directed new boards be convened in compliance with regulations—but since the maximum number of secondary zone officers had already been selected, plaintiffs were not given a second chance. *See id*. at 991–92. The Court held harmless error review was inapplicable, because "it is not possible for a reviewing body to determine what effect the error had on the judgment of the original proceeding." *Id.* at 996.

In cases where the procedural error does not implicate the composition of the board, courts regularly apply harmless error review. *See, e.g.*, *Sargisson v. United States*, 913 F.2d 918, 923 (Fed. Cir. 1990). For example, in *Sargisson*, the plaintiff was an Army Reserve officer who was passed up for promotion and later sued claiming the selection board contained too few reserve component officers. *See* 913 F.2d at 923. The Federal Circuit explained the statute requiring an "an appropriate number of Reserves" to participate on the selection board "was enacted because 'Congress was concerned that the military establishments (with their significant sector of Regular officers) not discriminate against Reserves.'" *Id.* at 923–24 (citing *Doyle*, 599 F.2d at 994). The court held the plaintiff "could not have been prejudiced" because only reserve officers were being considered so plaintiff "was not competing with regular officers for retention on active duty." *Id.* at 923. The court distinguished the case from *Doyle* because *Doyle* "involved selection boards that considered both regular and reserve officers; the potential for prejudice could not be gain-said." *Id.*; *see also, e.g.*, *Driscoll v. United States*, 158 Fed. Cl. 399, 404 (2022) (holding error was not harmless where, through administrative blunder, plaintiff was not given time to timely submit mitigating circumstances to the Board); *Dolan v. United States*, 91 Fed. Cl. 111, 123–24 (2010) (holding plaintiff's medical evaluation and discharge being considered separately *was* harmless because the Secretary had made the discharge decision before the medical process started).

When conducting harmless error review, this court's harmless error framework lays the initial burden on plaintiff to demonstrate prejudice, which the government may thereafter rebut. In *Christian v. United States*, plaintiff alleged unconstitutional discrimination giving preferential retention to non-white males was a reversible procedural error. 337 F.3d 1338, 1344 (Fed. Cir.

2003).  While the number of officers given such preference was only 341, the number of white male officers retired was more than 1000.  *See id*.  As there was at most a one-third chance of plaintiff being retained even if no preferential treatment were given, the court held plaintiff did not demonstrate the error was harmful.  *See id*.  As another example, in *Driscoll v. United States*, petitioner received a traffic citation for driving with blood alcohol content above the legal limit and faced multiple adverse administrative actions. 158 Fed. Cl. 399, 404 (2022).  Driscoll was suspended from his position as recruiter, though he was reinstated months later, and at the same time was notified of potential denial of active duty service by the Qualitative Management Program ("QMP").  *See id*.  Alleging procedural errors with the QMP's ultimate adverse decision, plaintiff sued in the Court of Federal Claims.  *See id.*  This court applied a two-step process of review for harmless error:  first, "a plaintiff must show the existence of an administrative error and, further, must 'at least . . . set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action; . . . [i]f plaintiff makes such a showing, the 'end-burden of persuasion falls to the Government to show harmlessness—that, despite plaintiff's prima facie case, there was no substantial nexus or connection.'"  *Id*. at 412 (quoting *Christian*, 337 F.3d at 1343).

        These cases establish where an error causes an agency decision-making body to be comprised in a manner contrary to statute, a court will not speculate as to whether the result would be the same if the body was properly constituted.  *See Wagner*, 365 F.3d at 1364–65; *Doyle*, 599 F.2d at 990.  Like the lack of any reserve officers on the board in *Doyle*, a board that excludes a required member, includes an ineligible member, or is otherwise contrary to law, exhibits a fatal procedural defect—which fails to preserve the essential elements of a fair proceeding and renders a court unable to assess the impact of the error.  *See also Wagner*, 365 F.3d at 1362–64 (discussing "two justifications for refusing to apply the harmless error rule:  (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error").  Where a procedural defect causes a board to be composed in a manner contrary to applicable law—like in *Dolan*—harmless error review is inapplicable.  Conversely, where a decision-making body is composed in a manner which could, under at least some circumstances, be compliant with the law—like the board in *Sargisson* which allowed the Secretary to exercise discretion in appointing an "appropriate" number of reserve officers to the board—courts apply harmless error review and require a plaintiff to demonstrate prejudice from the alleged procedural error.  *Sargisson*, 913 F.3d at 923; *Christian*, 337 F.3d at 1344.

### C.    Whether Harmless Error Review Applies to Plaintiff's Claim

        Plaintiff argues the disenrollment board was improperly constituted because Colonel Cogbill was required to document a valid military exigency before a captain could preside over the disenrollment board.  *See* Pl.'s MJAR at 9–12.  Plaintiff's argument hinges upon whether the Disenrollment Board not including a field-grade officer without a contemporaneous document showcasing military exigence constitutes either a quantifiable or unquantifiable harm.  The procedural error plaintiff alleges here relates to the makeup of the board and whether the failure to contemporaneously document military exigency to change the makeup of the board constituted an unquantifiable error.  Colonel Cogbill's 27 May 2021 Memorandum explained the ROTC program "did not have an available field grade officer to conduct the board due to our two

field grade officers being . . . actively engaged in several other priorities and planning operations." *See* AR at 309 (James B. Cogbill's 27 May 2021 Memorandum of Record re Exigency for Disenrollment Board Proceedings). Plaintiff agreed at oral argument "if the exigency was analyzed and documented at the time the Board appointment was made . . . then the use of three captains would have been procedurally proper." Tr. at 69:20–23. Plaintiff's argument is not, therefore, that no valid exigency existed, but only the failure to *contemporaneously* document the exigency necessarily renders "the composition of the board invalid." Tr. at 69:23–25. There is no basis in the record to conclude a military exigency did not exist at the time of the March 2021 hearing, and plaintiff agrees if the exigency was documented at that time, the board's constitution would have been proper. *See* Tr. at 69:20–23. The error here is therefore one of the timing of a written determination of the exigency, not of whether the exigency existed to support the composition of the board itself. In other words, if Colonel Cogbill had not made the error, and the memorandum was written and filed in March 2021 instead of May 2021, the board's composition would not have changed and the board's conclusion would be the same.

Col. Cogbill's belated documentation of a military exigency meets neither justification discussed in *Wagner* for refusing to apply harmless error review. *See* 365 F.3d at 1362–64 (discussing "two justifications for refusing to apply the harmless error rule: (1) avoiding the erosion of essential components of a fair trial; and (2) the inability of a reviewing body to assess the magnitude of the error"). First, the precise timing of a written finding of exigency does not implicate "essential components of a fair trial" because, as plaintiff agreed, "if the exigency was analyzed and documented at the time the Board appointment was made . . . then the use of three captains would have been procedurally proper." Tr. at 69:20–23. Second, the Court is able to assess the magnitude of the error's impact on the board's decision; given the error was simply the timing of a one-paragraph memorandum which had no impact on the makeup of the board, *see supra*, there is no basis for the Court to find the error had any impact at all. Harmless error review is therefore applicable because the error here did not impact which individuals made the decision, nor create a question of whether their ultimate decision would have been the same in the absence of the error. *See Sargisson*, 913 F.2d at 922–23 (applying harmless error review where plaintiff alleged a review board included too few reserve officers "because all the officers reviewed by the [review board] were reserves [so] no element of bias could exist which might favor regular officers over reserves").[7] Considering "strict compliance with procedural requirements is not required where the error is deemed harmless," *Wagner*, 365 F.3d at 1361, and because Col. Cogbill's belated military exigency justification was harmless, *see supra*, plaintiff's argument the Army did not follow its own regulations fails muster and demonstrates the Army did not act contrary to law. Accordingly, the Court "will not disturb the decision of the corrections board [given the Army did not act] arbitrary, capricious [or] contrary to law." *Chambers v. United States*, 417 F.3d 1218, 1227 (Fed. Cir. 2005) (citing *Haselrig v. United States*, 333 F.3d 1354, 1355 (Fed. Cir. 2003)).

---

[7] To clarify, the Court does not hold Colonel Cogbill's belated finding of a military exigency was not erroneous or "cured" by the later filing. The delay in filing violated Army regulations which mandated the filing be "made in writing at the time of appointment" of the board. *See* USACC Pam. 145-4 ¶ 8-3d. The Court's decision only holds this error is subject to harmless error review and was in fact harmless.

### D. Whether Plaintiff Can Obtain Any Relief on Count III if Harmless Error Review Does Not Apply

Assuming the delay in documenting a military exigency is, as plaintiff argues, an unquantifiable error not subject to harmless error review, the government argues the Court still cannot offer plaintiff any remedy other than remand and plaintiff does not seek remand. *See* Tr. at 55:4–11. Considering the Court could not, by definition, evaluate the impact of an unquantifiable error, there is no way for the Court to know what the decision of the Board would be without the error. *See Wagner*, 365 F.3d at 1364–65. In such case, the proper remedy would have been to ask this Court to remand the proceeding back to the Board. *See, e.g.*, *Evensen*, 654 F.2d at 75; *Boyle*, 101 Fed. Cl. at 604; *Stuart*, 108 Fed. Cl. at 472; *Rogers v. United States*, 124 Fed. Cl. at 776; *Driscoll*, 158 Fed. Cl. at 415. Despite remand being the normal remedy for plaintiff's allegation, plaintiff explicitly disclaimed a request for remand to the Army Board at oral argument:

> [THE COURT:]  [I]s Plaintiff asking for a remand?
> [PLAINTIFF:]  . . . [W]e're not.
> THE COURT:  Only asking for payment?
> [PLAINTIFF:]  Yes. . . .
> [THE COURT:]    [N]ot even a remand as under arbitrary and capricious standards? . . . [T]hat's not in your relief requested?
> [PLAINTIFF:]  No."

Tr. at 51:16–52:1.[8]

In lieu of a remand, remedying the alleged error related to the makeup of the Board would require the Court to "speculate as to what the outcome might have been had the error not occurred." *See Wagner*, 365 F.3d at 1359, 1365. Specifically, to remedy plaintiff's claim without a remand, the Court would need to place itself in the shoes of a field-grade officer serving on the Board in conducting its analysis. Plaintiff has not cited any case where, after the Court of Federal Claims found harmless error inapplicable, the court calculated and awarded damages on its own authority instead of remanding to the discretionary body. 10 U.S.C. §§ 2005 and 2107 do not authorize the Court to replace the discretion of the Army with its own, and well-settled precedent forbids the Court to substitute its discretion for the reviewing body in

---

[8] The Court dealt with a similar issue in *Enriquez v. United States*, 174 Fed. Cl. 327 (2025). In *Enriquez*, a member of the Board of Inquiry had impermissible personal knowledge of plaintiff's relief of command. *See id.* at 333. The Board for Correction of Naval Records ("BCNR") found the error was harmless, but the Court reversed, finding the board member should necessarily have been excluded, and harmless error review was inapplicable. *See id.* at 348. The Court accordingly "remand[ed] the case to the BCNR to re-evaluate these decisions." *Id.* at 365. Unlike *Enriquez*, plaintiff has excluded remand as a possible remedy. *Compare Enriquez*, 174 Fed. Cl. at 338 ("[T]he government agreed personal knowledge could be a structural or compositional error"), *with* Tr. at 75:1–10 ("THE COURT:  [T]here's no case that says [a board which] had an improper composition without documentation that could have been documented [and] is post hoc documented, is necessarily a confirmed procedural compositional error.  [PLAINTIFF:]  No case that I'm aware of.  THE COURT:  [I]t fits into some gray area between the two? [PLAINTIFF:]  Yes."). Like *Enriquez*, a military board compositional issue is only properly remedied by remand to the discretionary military body.

"determination of the appropriate remedy." *Wagner*, 365 F.3d at 1359, 1365. Members in the ROTC program are not entitled to receive a commission, even if they abide by their contract: "[t]o be eligible for appointment as a cadet . . . a member must . . . agree in writing that *at the discretion of the Secretary of the military department concerned*, he will . . . accept an appointment, *if offered*, as a commissioned officer in the Army." 10 U.S.C. § 2107(5) (emphasis added). Plaintiff's contract also states "the Secretary of the Army . . . may at any time release [plaintiff] without notice from the obligations under this contract and disenroll [plaintiff] from the ROTC program without further benefits." AR at 45 (Signed and Dated ROTC Enlistment Contract). Plaintiff has not provided any statutory limits to the Secretary's discretion by which the Court could appropriately conclude he is entitled to the remaining benefits of the ROTC contract. *See* 10 U.S.C. § 2107 ("The Secretary . . . *may* provide for the payment of all expenses . . . [t]he Secretary . . . *may* provide financial assistance") (emphasis added); 10 U.S.C. § 2005 ("The Secretary concerned *may* require, as a condition to the Secretary providing advanced education assistance . . .") (emphasis added). Given the explicit discretion afforded to the Secretary of the Army and plaintiff's failure to identify any statutory requirements limiting this discretion—and especially considering remand is the proper remedy for an unquantifiable error and plaintiff rejected a remand to the Board—the Court will "not speculate as to what the outcome might have been had the error not occurred," *Wagner*, 365 F.3d at 1359, 1365, or "substitute [its] judgment for that of the [Board]," *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983). *See also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters."); *Doyle*, 599 F.2d at 990, 1001 (holding harmless error review was inapplicable because "it is not possible for a reviewing body to determine what effect the error had on the judgment of the original proceeding," and "that these plaintiffs did receive full and fair consideration by the reconstituted selection boards"); *Roth v. United States*, 378 F.3d 1371, 1385 (Fed. Cir. 2004) (citing *Orloff*, 345 U.S. at 94) ("In the military arena, [there is an] admonition against court interference with military matters . . . ."); *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[T]he military is entitled to great deference in the governance of its affairs.").

### E.    Whether the Court Can Grant Any Relief on Plaintiff's Count IV Correction of Records Claim

Plaintiff's fourth count—"Correction of Records Pursuant to 28 U.S.C. § 1491(a)(2)"—alleges the ABCMR's decision upholding plaintiff's disenrollment was arbitrary and capricious. *See* Pl.'s Am. Compl. ¶¶ 134–41. Plaintiff argues "the Court should find that the disenrollment was improper, cancel [p]laintiff's remaining indebtedness to the U.S. Government, and order Defendant to refund the $12,500.00 already paid to DFAS." *Id.* Whether plaintiff should have been called into active service in lieu of monetary repayment is not before the Court. *See* Tr. at 12:19–13:6 ("[THE COURT:] Did Plaintiff request active duty in lieu of monetary payback? . . . [PLAINTIFF:] Before the ABCMR, no. . . . [THE COURT:] So is this issue part of Plaintiff's grounds for error on the part of the ABCMR? [PLAINTIFF:] It is not."). The proper remedy, when an agency acts arbitrarily and capriciously, is remand—especially where the error involves board composition and harmless error review is inappropriate. *See supra* Section V.C.3; *see also SAGAM Securite Senegal v. United States*, 2023 WL 6632915 (Fed. Cir. Oct. 12, 2023), at *7 ("A remand is the proper remedy where the court doubts that the agency has properly exercised

its discretion but recognizes that it is the agency which should exercise that discretion and not the court."); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) ("[I]f the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation."). Plaintiff disclaimed a request for remand. *Supra* Section VI.D; Tr. at 51:16–24. Given remand is the appropriate remedy for plaintiff's claim for correction of records and because plaintiff has not requested a remand, plaintiff's request for the Court to deem plaintiff's disenrollment improper and afford plaintiff monetary relief in lieu of a remand would require the Court to improperly "substitute [its] judgment for that of the [Board]." *Heisig*, 719 F.2d at 1156; *supra* Section VI.D.

### F.    Whether Plaintiff's Remaining Prayers For Relief Are Proper In Absence of Seeking a Remand

Plaintiff makes three additional requests for relief:  (1) remission of debt; (2) reimbursement of debt paid; and (3) the remaining financial assistance due for his last semester of school.  *See* Pl.'s Am. Compl. at 16–17.  The Court next determines whether it can appropriately grant any of plaintiff's requested relief given he has not requested a remand.

Plaintiff's remaining claims for relief are dependent on the Court overturning the decision of the ABCMR to uphold plaintiff's disenrollment, which plaintiff alleges was improper and/or arbitrary and capricious because the Army failed to follow its disenrollment procedures.  *See supra* Section VI.A.  The Tucker Act provides:  "[i]n any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."  28 U.S.C. § 1491(a)(2).  Where a military board involves a procedural error by a military body, especially in cases regarding personnel decisions, remand is generally the proper remedy.  *See supra*; *Antonellis*, 723 F.3d at 1333; *see also Driscoll*, 158 Fed. Cl. at 404 (remanding administrative separation to the ABCMR); *Rogers v. United States*, 124 Fed. Cl. 776–77 (2016) (remanding administrative separation from the Coast Guard to the separation board); *Kennedy*, 845 F.3d at 1383–84 (remanding disenrollment from NROTC to the Board for Correction of Naval Records).  As explained *supra* Section VI.D, plaintiff has explicitly disclaimed remand to the ABCMR as relief.  Tr. at 51:16–24.  Given remand would be the appropriate remedy for plaintiff's claim for correction of records, and because plaintiff rejected remand at oral argument, the Court will not "substitute [its] judgment for that of the [Board]" to require the Army to pay plaintiff.  *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *supra* Section VI.D.

### VII.    Whether the ABCMR's Decision Regarding the Alleged Violation of USACC Pamphlet 145-3 ¶ 8-4 Related to Proper Advisement of Plaintiff of his Rights Prior to his Testimony Before the Disenrollment Board was Arbitrary and Capricious

Plaintiff argues the government committed further procedural error when it "violated USACC pamphlet 145-4, ¶ 8-5 when it did not properly advise [plaintiff] of his rights prior to his testifying before the Disenrollment Board."  Pl.'s MJAR at 12 (citation modified).  Specifically, plaintiff argues "the disenrollment hearing transcript only states that [plaintiff] was 'read rights,'" and "there is no evidence [plaintiff] was fully advised of [his] rights at any time during

the disenrollment hearing." Pl.'s MJAR at 12–13. According to plaintiff, "[t]he absence of direct evidence [plaintiff] was fully advised of his rights should weigh against the inference that the Disenrollment Board fully complied with the advisement requirements of [Army regulations]," especially considering plaintiff "has consistently alleged that the Disenrollment Board did not properly or fully advise him of his rights prior to his testimony." *Id.* at 13.

The parties agreed at oral argument the disenrollment board president was required to advise plaintiff of certain rights enumerated in USACC Pamphlet 145-4, ¶ 8-5(a) and (b). *See* Tr. at 59:2–24. These rights included the right to examine and object to evidence, call and examine witnesses, testify as a witness, challenge any board member, and the right to counsel. *See* USACC Pamphlet 145-4, ¶ 8-5(a)–(b). The summarized transcript of the ABCMR proceeding includes an annotation stating Mr. Moyer was "read [his] rights" and he replied in the affirmative that he "understood." AR at 144–45 (17 Mar. 2021 Board Summarized Transcript). Colonel Cogbill's 7 Jan. 2021 Counseling Statement also advised plaintiff to obtain counsel or some confidant. *See* AR at 124–25 (Colonel Cogbill's 7 Jan. 2021 Counseling Statement). At oral argument, plaintiff conceded, in light of the summarized transcript and absent other evidence to the contrary, the record supports the conclusion plaintiff was properly advised of his rights. *See* Tr. at 64:24–65:7 ("[PLAINTIFF:] Are you asking if in light of the transcript we read and the requirements there, if I would agree that the absence supports that he was read his rights? THE COURT: Correct. [PLAINTIFF:] I do agree with that, yes."). The Court agrees with plaintiff's concession the record evidence demonstrates plaintiff was "read rights," as is required by USACC Pamphlet 145-4, ¶ 8-5. *See* AR at 144–45 (17 Mar. 2021 Board Summarized Transcript). Given the record demonstrates the Board complied with the requirement to advise plaintiff of his rights, the Court "will not disturb the decision of the [Board]" because it is not "arbitrary, capricious, [or] contrary to law." *Chambers*, 417 F.3d at 1227 (citing *Haselrig*, 333 F.3d at 1355).

Further, even if plaintiff had *not* been read his rights, plaintiff must show he suffered prejudice as a result of the Board's failure to read him his rights. *See Lindsay v. United States*, 295 F.3d 1252, 1258 (Fed. Cir. 2002) ("[T]he claimant is not entitled to relief unless the claimant shows a 'nexus' between the error or injustice and the subsequent decision not to promote the officer or separate him or her from service."). At oral argument, plaintiff was unable to identify any prejudice plaintiff suffered from any failure to advise him of his rights. *See* Tr. at 63:15–19 ("[THE COURT:] [F]rom Plaintiff's perspective, what prejudice did Plaintiff suffer for his rights not being read to him? [PLAINTIFF:] I'm not sure that he suffered prejudice from rights not being read."). Accordingly, even if plaintiff was not properly read his rights, the Court finds any such error did not prejudice plaintiff and was harmless. As "strict compliance with procedural requirements is not required where the error is deemed harmless," *Wagner*, 365 F.3d at 1361, the Court "will not disturb the decision of the corrections board [given the Army did not act] contrary to law," *Chambers*, 417 F.3d at 1227 (citing *Haselrig*, 333 F.3d at 1355); *see also Heisig*, 719 F.2d at 1157.

## VIII.  Conclusion

For the foregoing reasons, plaintiff's Motion for Judgment on the Administrative Record, ECF No. 13, is **DENIED**, and the government's Cross-Motion for Judgment on the

Administrative Record, ECF No. 15, is **GRANTED**.  The Court hereby **DISMISSES** plaintiff's case.  The Clerk's Office is **DIRECTED** to enter judgment accordingly.

       **IT IS SO ORDERED.**

<u>s/ Ryan T. Holte</u>
RYAN T. HOLTE
Judge